1  Ara Sahelian, Esq., [CBN 169257]
2  SAHELIAN LAW OFFICES
   23276 South Pointe Drive, Suite 216
3  Laguna Hills, CA  92653
4  949. 859. 9200
   e-mail: sahelianlaw@me.com
5  Attorneys for Isabel, Inc.
6
7
8               **UNITED STATES DISTRICT COURT**
9               **CENTRAL DISTRICT OF CALIFORNIA**
10                    **(Southern Division - Santa Ana)**
11
12
13
14
15
16  Suzanne Na Pier,
          Plaintiff,
17                                    CASE NO.: 8:20-cv-02135-JLS-DFM
           vs.                        The Honorable Josephine L. Staton
18  Isabel, Inc.; Linda Bass; Leslie
    Arenson,
19          Defendants.               **REPLY BRIEF TO MOTION TO**
                                      **DISMISS [FRCP 12(b)1]**
20
21                                    Hearing Date: 2/5/21
                                      Time: 10:30 AM
22
23
24  .
25
26
27
28

REPLY BRIEF TO MOTION TO DISMISS [FRCP 12(b)1] Page 1 -

## REPLY BRIEF TO MOTION TO DISMISS [FRCP 12(b)1]

**A. Nowhere in the Complaint (or the Opposition) is an explanation, for the lay person, as to what a built-up curb ramp actually is, and why it need not be an access barrier. And nowhere in the Complaint is an honest assertion that a built-up curb ramp can be allowable.**

> "...Defendants have: a built up curb ramp that projects from the sidewalk and into the access aisle (Section 406.5). Furthermore, the curb ramp is in excess of the maximum grade allowed by ADAAG specifications (Section 406.1)." (Complaint ¶13.)

This attorney is himself confined to a wheelchair, and well experienced with curb-ramps. But it would be unreasonable to expect the Court, or anyone else who has not used a wheelchair to understand what a built-up curb ramp is, and how it affects mobility. How it affects mobility is entirely a function of a plaintiff's physical limitation, whether he or she walks with a cane, or uses a wheelchair, and whether it is a manual wheelchair or powered.

Exhibit A shows the built-up curb ramp at the property. It is nothing more than a shallow slope spanning from the asphalt to the sidewalk. The plaintiff must, at the very least, allege *how* this shallow slope presents an access barrier to her.

A built-up curb ramp can be permissible. Chapter 4 of the Guide to the ADA Standards explains how. (See Exhibit B, page 3 for an illustration).

The plaintiff alleges that she qualifies as a disabled person. She states: "Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing,

ambulating, and sitting. As a result of these disabilities, Plaintiff relies upon mobility devices, including at times a wheelchair, to ambulate."

If we are to accept the above allegation literally, the plaintiff could qualify as a disabled person if she were unable to sit comfortably in an office chair for say more than half an hour, or if she were unable to stand on her feet for more than an hour, or if she were unable to walk for more than a mile, or if she happened to use a wheelchair once a year at the doctor's office. It is bereft of substance.

**B. Nowhere in the Complaint is an explanation as to how a built-up curb ramp, of which the plaintiff complains, is directly related to her particular disability.**

The plaintiff alleges she:

"personally encountered these barriers. The presence of these barriers related to Plaintiff's disability denies Plaintiff his right to enjoy accessible conditions at public place of accommodation and invades legally cognizable interests created under the ADA."

Once again, this is a formulaic recitation of the causation element. It too is bereft of substance.

The plaintiff insists that we must assume that her disability is somehow related to the built-up curb ramp simply because she defines herself as disabled. It displays a profound misunderstanding of the law. This is exactly what *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (en banc) cautions us against. In *Chapman*, the plaintiff had attached a list of violations to the complaint and provided no explanation as to how those

violations were related to his disability, essentially no different than the complaint here.

    The plaintiff, here, cites a violation of the Guidelines, the built-up curb ramp, and no explanation thereafter as to how her yet undefined disability is related to the built-up curb ramp.

> "Chapman leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. *Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store*, or *how* any of them deter him from visiting the Store due to his disability." *Id*., 955. (Emphasis added).

The plaintiff cannot avoid these pleading requirements by simply assuming that the ADA is a private attorney general statute.

> "[t]he ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people's injuries." "[W]e must put aside the natural urge to proceed directly to the merits of this important dispute and to 'settle' it for the sake of convenience and efficiency. Instead, *we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.*"). *Id.,* 960. (Emphasis added).

**C. Nowhere in the Complaint is there an assertion that explains the likelihood that the plaintiff will again be wronged in a similar way.**

Plaintiff alleges:

"Upon being informed that the public place of accommodation has become fully and equally accessible, she will return within 45 days as a "tester" for the purpose of confirming their accessibility."

Again, this is nothing more than a formulaic recitation of the imminent harm elements of Article III standing.

The Complaint is replete with bare, conclusory allegations, and formulaic recitation of the elements of a cause of action. The plaintiff has failed to allege Article III standing. This and other complaints are the products of ADA mills. These mills file on an industrial scale, with little or no attention to detail. Their objective is to, naturally, maximize profits and to let everyone else bear the consequences.

In an attempt to distort this attorney's record, plaintiff's counsel has cherry picked a few cases in which motions brought by this attorney were denied. This attorney submits briefs filed in the following cases to clarify the record:

Matter: *Whitaker v. BAS* (Appeal in the 9th Cir.), Case Number: 20-55228

Matter: *Ford v. Carnwright*, Case Number: 5:19-cv-00997-FMO-AGR, United States District Court, Central District of California, The Honorable Fernando M. Olguin

Matter: *Whitaker v. Shoe Care, Inc. et al*, Case Number: 2:19-cv-06089-AB-AFM, United States District Court, Central District of California, The Honorable Andre Birotte Jr.

Matter: *Rutherford v. Younan*, Case Number: 5:20-cv-01204-MWF-SP, United States District Court, Central District of California, The Honorable Michael W. Fitzgerald

Matter: *Bouyer v. Lavi* , Case Number: 2:20-cv-04764-SB-AS, United

States District Court, Central District of California, The Honorable Stanley Blumenfeld Jr.

*Rutherford v. Evans Hotels, LLC*, 2020 U.S. Dist. LEXIS 161565 (S. D. Cal. September 3, 2020)

And others.

Respectfully submitted:

Date: 12/22/2020

_____
Ara Sahelian, Esq.
SAHELIAN LAW OFFICE